Entered on Docket
July 31, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: July 30, 2007



_____
**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>THOMAS FRANK MINI and GAIL F. MINI,<br><br>        Debtors.<br>_____/<br><br>THOMAS FRANK MINI and GAIL F. MINI,<br><br>        Plaintiffs,<br><br>    vs.<br><br>STATE OF CALIFORNIA, BOARD OF EQUALIZATION and RAMON J. HIRSIG, EXECUTIVE DIRECTOR OF CALIFORNIA BOARD OF EQUALIZATION.<br><br>        Defendants.<br>_____/ | No. 01-43201 TG<br>Chapter 13<br><br><br><br><br><br>A.P. No. 06-4219 AT |

**MEMORANDUM OF DECISION AFTER TRIAL**

      The above-captioned adversary proceeding was tried to the Court on June 22, 2007 at 9:00 a.m. Both parties appeared through counsel. The proceeding was submitted on stipulated facts, and legal argument made. At the conclusion of argument, the matter was taken under submission. Having considered the undisputed evidence, the argument made, and the law applicable to the issues presented, the Court

concludes that plaintiffs are entitled to judgment against defendant State of California, Board of Equalization (the "SBE") as set forth below. Judgment will be entered in favor of defendant Ramon J. Hirsig ("Hirsig").

**SUMMARY OF FACTS**

Prior to the commencement of this chapter 13 bankruptcy case, the plaintiffs were the sole shareholders of Armstrong Stationers, Inc. ("Armstrong"), a corporation doing business in California. On January 19, 2001, Armstrong filed a chapter 7 case. The SBE was scheduled as a creditor based on Armstrong's unpaid sales tax obligations and received notice of the case. The case was a "no asset" case, and no distributions were made to creditors. A final decree was entered in Armstrong's bankruptcy case on March 26, 2001.

The plaintiffs filed the above-captioned chapter 13 case on June 6, 2001. As the responsible persons for Armstrong, the plaintiffs were liable for Armstrong's unpaid sales tax obligations to the SBE. They scheduled the SBE as a creditor holding an unsecured priority tax claim. The plaintiffs filed a chapter 13 plan that provided that priority claims would be paid in full.

The SBE received notice of the plaintiffs' bankruptcy case in time to file a claim. It drafted a proof of claim but then decided not to file it based on the mistaken belief that the debt was solely a corporate debt. The plaintiffs fully performed their plan and received a chapter 13 discharge on August 29, 2002. The SBE received a copy of the discharge order no later than February 18, 2003.

On January 12, 2005, the SBE informed the plaintiffs that they should arrange for payment of the tax liability. The plaintiffs responded shortly thereafter, informing the SBE that its claim had been discharged in their bankruptcy case and referring the SBE to their bankruptcy attorney. On February 14, 2006, the SBE sent a Notice of Determination that the plaintiffs were personally liable for this debt.

On May 15, 2006, the SBE caused a levy to be placed on the plaintiffs' checking account. The following day, the plaintiffs' counsel faxed a letter to the SBE, confirming his telephone conversation with a representative of the SBE. The letter indicates that the SBE had asserted that the tax liability was a nondischargeable trust fund tax pursuant to 11 U.S.C. § 507(a)(8)(C). The letter further indicates that the SBE asserted that, because the tax liability had not been assessed until after the plaintiffs' chapter 13 bankruptcy case was filed, it constituted a post-petition claim that was not discharged.

The letter cited authority for the proposition that sales taxes did not constitute trust fund taxes. However, it stated that, even if they were, they would have been discharged in the plaintiffs' chapter case. Counsel noted that the plaintiffs' chapter 13 plan provided for payment in full of priority claims and that, had the SBE filed a proof of claim, it would have been paid in full. It stated further that the fact that the taxes were not assessed until after the bankruptcy petition was filed did not make them post-petition taxes. The liability arose before the petition was filed and

3

therefore constituted a pre-petition claim. Counsel made demand that the SBE immediately cease all collection efforts and warned the SBE that plaintiffs would view the continuation of such efforts as a willful violation of the discharge injunction, punishable by contempt.

Notwithstanding this communication, on May 24, 2006, the SBE placed a levy on the plaintiffs' wages. It also withheld Mr. Mini's California income tax refund for the year of 2005. On or about September 1, 2006, counsel for the plaintiffs faxed a second letter to the SBE. The letter reflects that the SBE was now taking the position that the tax liability was not discharged because the plan did not provide for payment of the liability. The letter indicates that a copy of the plan was being transmitted and notes that the plan provided for payment in full of all priority tax claims. Counsel for plaintiffs notes that, since the plan was prepared on the form required the local bankruptcy court, this provision was necessarily sufficiently specific to provide for the SBE's claim.

The SBE did not cease its collection efforts until September 8, 2006 when the plaintiffs filed this adversary proceeding.

**DISCUSSION**

This adversary proceeding presents four issues:

(1) When did the plaintiffs' tax liability to the SBE, as responsible persons for Armstrong's sales tax debt, arise?

(2) If the plaintiffs' tax liability arose before the filing of their chapter 13 bankruptcy petition, did the chapter 13 plan provide sufficiently for the claim so that the claim was discharged?

4

(3) If the plaintiffs' tax liability was discharged by their completion of their chapter 13 plan, do the Eleventh Amendment of the Constitution and the doctrine of sovereign immunity prevent the Court from granting plaintiffs a judgment against the SBE?[1]

(4) Are plaintiffs are entitled to an injunction and an award of damages against Hirsig pursuant to Ex parte Young, 209 U.S. 123 (1908)?

The Court will discuss each issue in turn.

## A. WHEN DID TAX LIABILITY ARISE?

The definition of "claim" as set forth in 11 U.S.C. § 101(5) includes any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undipsuted, legal, equitable, secured, or unsecured...." The only limitation on this broad definition is one of due process. The claimant must have had some reason to believe that it might have such a claim. See In re Jensen, 995 F.2d 925 (9th Cir. 1993). While bankruptcy law frequently looks to state law to determine the participants' rights, the definition of "claim" is governed by federal bankruptcy law, not state law.

In the context of the facts recited above, there can be no doubt that the SBE's claim against the plaintiffs' arose prior to the commencement of their chapter 13 case. The Armstrong tax liability clearly arose before the filing of the plaintiffs' bankruptcy

---

[1] There is no dispute among the parties concerning whether Armstrong owed the tax liability in question to the SBE or whether this also constituted a liability of the plaintiffs as responsible persons for Armstrong.

5

petition. Thus, as responsible persons for Armstrong, the plaintiffs' liability for that debt arose before they filed their petition as well. The SBE knew about Armstrong's tax liability and thus knew or should have known that the plaintiffs might be liable for that debt as well before the plaintiffs' petition was filed. The assessment of the debt did not give rise to the debt, at least within the meaning of 11 U.S.C. § 101(5).

In support of its position that its claim against the plaintiffs arose post-petition, the SBE cites In re Bracey, 77 F.3d 294, 295-96 (9th Cir. 1996) and In re King, 961 F.2d 1423 (9th Cir. 1992). According to the SBE, Bracey and King hold that that tax liabilities that have not been assessed pre-petition are not discharged. These decisions are inapposite. Both Bracey and King were chapter 7 cases. In each decision, the issue was not whether the claim arose before the bankruptcy petition was filed but whether the claim was nondischargeable.

In Bracey, the issue was whether an income tax claim was nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(A) as a claim "not assessed before, but assessable...after, the commencement of the case." 77 F.3d at 295. In King, the issue was whether an income tax claim was nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(A) as a claim assessed within 240 days of the petition date. 961 F.2d at 1424. In both instances, the outcome of this issue turned on the Court's conclusion as to when assessment occurred. Neither case questioned whether the claim had arisen pre-petition. Had the claim

6

not arisen pre-petition, the issue of dischargeability would not have arisen.

Thus, the Court concludes that the plaintiffs' liability for Armstrong's tax liability as Armstrong's responsible persons arose before their chapter 13 petition was filed and was subject to being discharged in their chapter 13 case. See 11 U.S.C. § 1328(a).

**B. DID CHAPTER 13 PLAN PROVIDE FOR SBE'S CLAIM?**

A chapter 13 debtor receives a discharge upon completion of his or her plan. 11 U.S.C. § 1328(a). The debtor is thus discharged from all debts (with exceptions not relevant here) provided for in the plan.

It is undisputed that, in their chapter 13 case, the plaintiffs filed a chapter 13 plan on the form required by the United States Bankruptcy Court for the Northern District of California, Oakland Division. It is further undisputed that the form plan contains a provision that states that all priority claims will be paid in full. A chapter 13 plan may not be confirmed unless it contains such a provision. See 11 U.S.C. §§ 1322(a)(2); 1325(a)(1).

Thus, the plaintiffs' plan provided for the payment of the SBE's priority claim. Plaintiffs' counsel was correct when he stated in his September 6, 2006 letter to the SBE that, had it filed a proof of claim in the plaintiffs' bankruptcy case, its claim would have been paid in full. The fact that it mistakenly failed to file a claim does not prevent its claim from being discharged. The SBE makes no intelligible argument to the contrary.

7

**C. DID SBE WILLFULLY VIOLATE DISCHARGE INJUNCTION?**

The final issue presented is whether the SBE may be held liable for plaintiffs' attorneys' fees and costs incurred as a result of the SBE's violation of the plaintiffs' discharge injunction. See 11 U.S.C. § 524(a)(2). This issue includes two subissues: (1) whether the SBE's conduct meets the standards for contempt and (2) whether the Eleventh Amendment of the United States Constitute and the related doctrine of sovereign immunity prevent the imposition of these costs on the SBE.[2]

**1. Did SBE's Conduct Constitute Civil Contempt?**

It is well established that civil contempt is the only remedy for violation of the discharge injunction, regardless of whether the basis for the remedy is 11 U.S.C. § 105 or the court's inherent power. In re Dyer, 322 F.3d 1178, 1189-96 (9th Cir. 2003). "Civil contempt authority allows a court to remedy a violation of a specific order (including 'automatic' orders, such as the...discharge injunction)." Id. at 1196.

"When the court is acting under its inherent power, it must make an explicit finding of bad faith or willful misconduct....In this context,...bad faith or willful misconduct consists of something more egregious than mere negligence or recklessness." Id.

---

[2]The SBE raised the issue of sovereign immunity only in the context of the claim against Hirsig. Its discussion of the issue in that context suggested that the SBE assumed that the doctrine of sovereign immunity would prevent the imposition of attorneys' fees and costs against the SBE.

8

However, when the court is acting under 11 U.S.C. § 105, the court need only find, albeit by clear and convincing evidence, that the defendant knew that the debtor had received a discharge and engaged in conduct that violated the discharge injunction. The defendant's good faith belief that its conduct did not violate the injunction is irrelevant. <u>Dyer</u> at 1190-91. In this proceeding, the plaintiffs have satisfied their burden of proving these elements by clear and convincing evidence.

The remedy of civil contempt based on 11 U.S.C. § 105 only supports an award of compensatory, not punitive damages. <u>Dyer</u> at 1192-95. However, these are the only damages sought by the plaintiffs: i.e., their attorneys' fees and costs attempting to persuade the SBE to cease their post-discharge collection effort, first informally and then formally, through these proceedings. The plaintiffs are entitled to a judgment in the amount of those fees and costs. They also seek, and are entitled to, a judgment declaring their debt to the SBE for Armstrong's tax liability discharged and enjoining the SBE from any further attempts to collect the debt.

**2. Does Sovereign Immunity Bars Award Against SBE?**

Despite the parties' failure to raise the issue of sovereign immunity with respect to plaintiffs' claims against the SBE, the Court feels compelled to address it.[3] Until recently, it would have

---

[3] In the prayer of their complaint, the plaintiffs assert all of their claims against both the SBE and Hirsig. Nevertheless, in the SBE's answer to the complaint, the only affirmative defense raised related to sovereign immunity is that the exception created by <u>Ex parte Young</u>, 209 U.S. 123 (1908) limits the plaintiffs' remedies against Hirsig to prospective injunctive and declaratory

9

been questionable whether, pursuant to the Eleventh Amendment and the doctrine of sovereign immunity, a state or an "arm of the state" could be sued in bankruptcy court absent its consent. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 72, n.16 (1996). However, two recent Supreme Court decisions have established that, in many instances, it may be. See Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440 (2004); Central Virginia Community College v. Katz, 546 U.S. 356 (2006).

In Hood, a debtor sued an agency of the state for a determination that she was entitled to a bankruptcy discharge of her student loan obligation as an "undue hardship" pursuant to 11 U.S.C. § 523(a)(8). The state agency moved to dismiss the complaint, contending that it was protected from suit in the bankruptcy court on this claim by the Eleventh Amendment and the doctrine of sovereign immunity. The Supreme Court concluded otherwise. It held that the claim in question was within the bankruptcy court's *in rem* jurisdiction and did not infringe on the state's sovereignty. 541 U.S. at 447-51.

In Katz, a bankruptcy trustee sued an educational institution that constituted an "arm of the state" to recover a preference pursuant to 11 U.S.C. §§ 547(b) and 550(a). Elaborating on the rationale stated in Hood, the Supreme Court observed that bankruptcy jurisdiction is "at its core" *in rem*. It held that the states had

---

relief. In their trial briefs, neither party discussed sovereign immunity as applied to the plaintiffs' claims against the SBE. The only discussion in the trial briefs related to the scope of a remedy against Hirsig under Ex parte Young.

10

ceded this jurisdiction to Congress and the federal courts was part of the "plan of the Convention" leading to the formulation of the United States Constitution. Moreover, the Court stated, "the jurisdiction of courts adjudicating rights in the bankrupt estate included the power to issue compulsory orders to facilitate the administration and distribution of the res." 546 U.S. at 362; In re Omine, 485 F.3d 1305, 1313-14 (11th Cir. 2007)(chapter 13 debtor's motion for sanctions against Florida Department of Revenue for violation of the automatic stay did not impinge on state's sovereign immunity).

Based on these two decisions, the Court concludes that its *in rem* jurisdiction in bankruptcy permits it to grant the plaintiffs the remedies they seek. It further concludes that the permissible remedies include recovery of its attorneys' fees and costs resisting the SBE's improper collection efforts, including but not limited to the attorneys' fees and costs incurred in this adversary proceeding.

**D. ARE PLAINTIFFS ENTITLED TO JUDGMENT AGAINST HIRSIG?**

As noted above, the plaintiffs also asserted all of their claims against Hirsig, the Executive Director of the SBE. Presumably, this was done pursuant to the authority of Ex parte Young, based on the assumption that the doctrine of sovereign immunity would prevent the Court from entering judgment directly against the SBE. In Ex parte Young, the Supreme Court held that, when the doctrine of sovereign immunity prevented a private individual from suing a state or an "arm of the state" for violation of federal law, the individual could sue the state official responsible for the violation for prospective

11

relief.  See National Audobon Society, Inc. v. Davis, et al., 307 F.3d 835, 847 (9th Cir. 2002).  Absent such a remedy, there would be no practical way to enforce the Supremacy Clause of the United States Constitution.  However, as discussed above, given Hood and Katz, sovereign immunity does not prevent the plaintiffs from asserting their claims against the SBE.  Therefore, the extraordinary remedy authorized by Ex parte Young is unnecessary, and Hirsig is entitled to judgment in his favor.

**CONCLUSION**

The plaintiffs' tax liability to the SBE as the responsible persons for Armstrong arose before the filing of their bankruptcy petition and not when the SBE assessed them for the liability. Plaintiffs' chapter 13 plan provided for payment of the SBE's priority tax claim, and therefore the claim was discharged by plaintiffs' performance of the plan.  The Eleventh Amendment of the United States Constitution and the doctrine of sovereign immunity granting the plaintiffs all the remedies sought, including their attorneys' fees and costs, directly against the SBE.  Therefore, the extraordinary remedy authorized by Ex parte Young is unnecessary, and Hirsig is entitled to judgment is his favor.

Plaintiffs are directed to file a motion for allowance of their attorneys' fees and costs, with evidence substantiating the amounts claimed, pursuant to Local Rule 7007-1 of the Local Rules for the United States Bankruptcy Court for the Northern District of California before submitting a form of judgment in this proceeding.

END OF DOCUMENT

COURT SERVICE LIST

Robert N. Kolb
Law Offices of Robert N. Kolb
312 W 4th St.
Antioch, CA 94509

Kristian D. Whitten
Office of the Attorney General
455 Golden Gate Ave. #11000
San Francisco, CA 94102-7005